[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this action, returnable to this court on May 2, 1989, and claimed for trial to the court on June 26, 1992, the plaintiff seeks damages from the defendant for the breach of a contract under which the plaintiff was to manufacture for the defendant certain casting equipment for incorporation into a machine being used in a metal casting project.
The contract in question was entered into on March 2, 1984. The contract called for the delivery of both major units within 20 weeks of the date of the contract, but the units were not delivered until September 1984. Before that time, the defendant had inspected the units at the plaintiff's place of business in New Jersey, and made a determination that they did not meet the specifications set forth in the contract. When the delivery was completed, the defendant rejected the units. The defendant alleged that the units were shipped extremely poorly crated and without prior acceptance at the plaintiff's place of business. See Plaintiff's Exhibit "D". Apparently, the plaintiff made contact with a German company, Siemens, to provide equipment in place of G.E. equipment which would increase acceleration rate by replacing the G.E. Motor. See Plaintiff's Exhibit "F". It was expected that the Siemens drive units ordered by the plaintiff on October 29, 1984 would be delivered to the plaintiff within 90 days thereafter. They were actually received by the plaintiff 120 days later. In April 1985, Mr. Steve Munson, a representative of the CT Page 5562 defendant company, visited the plaintiff's business to examine and test the first unit. The units were not shipped. The plaintiff contends that they finished the second unit with the Siemens drive unit. They contend they tried to contact representatives of the defendant company during the months of June and July, but were unable to contact them. The plaintiff received a letter from the defendant indicating that the units did not conform to the contract specifications. The units had been returned to the plaintiff in December 1984. The letter, Plaintiff's Exhibit "H", indicated in July 1985 that the defendant rejected the withdrawal units and elected to terminate the contract as a result of the plaintiff's failure to timely deliver conforming equipment pursuant to Paragraphs 4 and 5 of the Purchase Order. The defendant demanded the return of the progress payments made to the plaintiff in the amount of $117,099.29. In subsequent communications, Mr. M.H. Denpsy, Supervisor of the defendant's engineering department, indicated that even if the units were operational, the delay of over a year did not conform with the time frame provided for in the contract (See Plaintiff's Exhibit "J". The defendant contended that the difficulties experienced with the equipment have seriously jeopardized its research programs. Mr. Tyler, Associate director of Process metallurgy Engineering Department of the defendant, enumerated the alleged defects and problems associated with the Ascast withdrawal units. Defendant's Exhibits 7, 8, 9, 10, 11, 12, 13.
The plaintiff claims that there remains a balance on the contract of $65,639.50 plus a trailer charge of $1,200.00 for the purchase of a trailer that the plaintiff bought for the storage of the withdrawal units not accepted by the defendant. The plaintiff contends that the units are not commercially marketable machines and that the plaintiff was never able to find a customer interested in purchasing the same. The plaintiff's president, George Kolle, admitted that the original units did not meet the specifications of the defendant, nor did they meet the plaintiff's specifications. He also admitted that the time employed by the plaintiff in preparing the units in question was 150 days longer than the entire contract period. He stated that they were still working on the units in July 1985, and he was surprised at the defendant's letter of July 25, 1985, terminating the contract between the parties.
Dr. Harvey Perry Cheskin, defendant's manager of the casting department, stated that the defendant didn't consider the units acceptable and that they wouldn't perform in accordance with the CT Page 5563 specifications of the contract. He stated that it was Dr. Tyler's decision not to accept the units. He said he never told Mr. Kolle that "we have had it", but that the plaintiff was notified that the units didn't come up to specification.
The defendant has interposed special defenses to the plaintiff's complaint which sound in breach of warranty and the statute of limitations, Conn. Gen. Stat. 42-2-725, because the law suit was not commenced within four years of the cause of action accrued. The defendant also counterclaimed money damages in the amount of $177,099.29, which represented the deposits and progress payments on the units in question. The defendant contended that the units were defective because of insufficient acceleration rate. The lower drive rolls were not concentric, several toggle switches were defective and that there was no provision for a torque limiter. They also contended there were numerous defects in the operation of the units. They contend that the plaintiff was given ample opportunity to cure these defects, but that they were not cured.
After a review of all of the evidence presented in this case, the court must conclude that the plaintiff has failed to sustain its burden of proof by a fair preponderance of the evidence that the defendant breached its agreement with the plaintiff, and that the plaintiff fulfilled its obligations under the contract. In the light of this conclusion, the judgment in this case must enter in favor of the defendant on the plaintiff's complaint.
Concerning the defendant's counterclaim, dated August 14, 1991, the plaintiff has contended that the defendant's cause of action is barred by the statute of limitations. The court agrees. The defendant's reliance on recovery under the recoupment theory must fail because it has been held that a counterclaim theory is an ineffective basis of recovery inasmuch as recoupment is purely a defense mechanism and not the basis of an affirmative recovery. See Genofisi v. JN Capp Co., 4 Conn. Appellate 443, 445. For this reason, the court concludes that Judgment should enter in favor of the plaintiff on the defendant's counterclaim.
O'BRIEN, STR